IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

TIMOTHY HARKER,
**Claimant Below, Petitioner**

**FILED**
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-26**        (JCN: 2025002224)

**ACNR RESOURCES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Timothy Harker appeals the December 22, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent ACNR Resources, Inc. ("ACNR") timely filed a response.[1] Mr. Harker did not file a reply. The issues on appeal are whether the Board erred in affirming two separate orders of the claim administrator, which (1) denied authorization for a referral to a neurological surgeon and (2) closed the claim for temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Prior to the compensable injury in this case, Mr. Harker was treated by Gregory Wood, D.O., at Wood Health Care Clinic for back and right shoulder pain. Mr. Harker described pain on both sides of his back, with radiation down the right leg. Dr. Wood assessed low back pain, and shoulder sprain/strain. Mr. Harker followed up with Dr. Wood on March 25, 2016. Dr. Wood reviewed Mr. Harker's recent MRI and noted that he had disc bulges, but no herniations or spinal stenosis. Mr. Harker reported that his back had been bad for the past year, and he had difficulty sitting or standing for long. He had been through physical therapy and prescribed NSAID's and muscle relaxants without relief. Dr. Wood assessed displacement of lumbar intervertebral disc without myelopathy and pain of the shoulder joint, and referred Mr. Harker to pain management.

---

[1] Mr. Harker is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. ACNR is represented by Aimee M. Stern, Esq.

On August 23, 2016, Mr. Harker began treatment with Ronald Hargraves, M.D., a neurosurgeon. Dr. Hargraves diagnosed advanced degenerative disc disease at L4-L5 and L5-S1. He also noted multilevel facet arthropathy with right greater than left lateral recess compromise at the L4-L5 level. Dr. Hargraves requested an EMG/nerve conduction study of the right lower extremity. On October 20, 2016, Mr. Harker followed up with Dr. Hargraves regarding his right lower extremity pain and numbness in the L5 distribution. Mr. Harker reported persistent right L5 distribution pain, that he had not responded to physical therapy, and that his symptoms had become intolerable.

Mr. Harker underwent an x-ray of his spine at Wood Health Care Clinic on May 15, 2019, which revealed bilateral neural foraminal stenosis at the C5-C6 level and mild disc space narrowing at C5-C6. On December 9, 2019, Mr. Harker followed up with Dr. Wood, and reported degenerative disc disease of the cervical spine, which caused him headaches. Dr. Wood's assessment included headaches and cervical disc degeneration. Dr. Wood saw Mr. Harker on October 15, 2021, regarding mid-back pain. Dr. Hargraves assessed thoracic myofascial strain. He was given an injection and prescriptions.

Mr. Harker returned to Wood Health Care Clinic on July 22, 2024, for middle back pain. He indicated that he was unsure what started the pain. The assessment was acute right-sided thoracic back pain. Dr. Wood provided a steroid injection and prescriptions.

Turning to the compensable injury relevant to this appeal, Mr. Harker presented to MedExpress on December 8, 2024, and reported that he was stepping onto a motor and twisted his back, causing it to lock up. Melinda Nicholes, NP, FNP-BC, assessed sprain of the thoracic region. Mr. Harker also completed a HealthSmart Employees' and Physicians' Report of Occupational Injury ("SIWC-1") form, indicating that he suffered an occupational injury to his back.

On December 13, 2024, Mr. Harker presented to Heather Gibbons, DNP, at MedExpress. Mr. Harker reported that his pain worsened over the last week, his right hip and leg were sore, but there was no numbness or weakness. Mr. Harker described the pain as sharp and stabbing and indicated that he had been taking prescribed muscle relaxants and steroids without improvement. Mr. Harker had a history of L4-L5 herniated disc that was resolved after surgery more than a decade ago. DNP Gibbons diagnosed strain of the thoracic region and referred Mr. Harker to physical therapy three times per week for four weeks. Thoracic x-rays performed on December 13, 2024, showed evidence of mild degenerative disease. There was no fracture or other acute abnormality identified. On December 19, 2024, the claim administrator held the claim compensable for strain of muscle and tendon of the wall of the thorax and granted TTD benefits.

Mr. Harker followed up with DNP Gibbons on January 3, 2025, and reported continuing right mid thoracic pain. DNP Gibbons noted that he would soon start physical therapy. DNP Gibbons assessed a thoracic back sprain. She placed Mr. Harker on modified

duty with restrictions on walking, standing, lifting, carrying, and operating heavy machinery.

On January 31, 2025, Mr. Harker returned to MedExpress for a follow-up regarding his thoracic back sprain. He reported continued right thoracic pain that radiated into his shoulder. Mr. Harker stated that he had ten sessions of physical therapy, which helped when he was there, but that the pain returned relatively quickly when he was finished. DNP Gibbons assessed thoracic back sprain.

On February 22, 2025, Mr. Harker underwent an MRI of his thoracic spine, which revealed no acute fracture. There was a left disc bulge at T7-T8 nearly abutting the ventral surface of the spinal cord, and adequate CSF dorsal to the spinal cord. At T9-T10, there was some facet degenerative joint disease and ligamentous hypertrophy causing mild spinal canal narrowing.

Mr. Harker followed up with DNP Gibbons on February 27, 2025, regarding his thoracic sprain and reported right shoulder pain. DNP Gibbons noted that the MRI showed a bulging disc at T7-T8. She assessed a thoracic back sprain and intervertebral disc disorder. DNP Gibbons stated that a referral to a neurosurgeon was pending authorization.

Prasadarao Mukkamala, M.D., reviewed records, examined Mr. Harker, and issued a report dated March 6, 2025. Dr. Mukkamala noted that the compensable condition was a strain of muscle and tendon of unspecified wall of the thorax. Mr. Harker reported pain in the mid back, mostly towards the right side. Mr. Harker recounted that he was injured at work on December 7, 2024, when stepping up onto a piece of equipment, when he felt a catch in his mid-back. Mr. Harker stated that he nearly fell but was able to catch himself. Dr. Mukkamala diagnosed a thoracic strain and concluded that Mr. Harker was at maximum medical improvement ("MMI") from the compensable injury and did not require further diagnostic studies or treatment. Dr. Mukkamala noted that Mr. Harker's primary care provider recommended a neurosurgical referral. He disagreed with this recommendation and concluded that the MRI findings were incidental and there was no neurological compression and therefore no indication for a neurosurgical referral. Dr. Mukkamala said that the T7-T8 disc bulge was quite benign with no nerve or cord compression.

By order dated March 10, 2025, the claim administrator denied the request for a referral to a neurological surgeon based on Dr. Mukkamala's report. Mr. Harker protested this order to the Board.

On March 17, 2025, Mr. Harker saw Kelly Smith, PA-C, at Wood Health Care Clinic. Mr. Harker reported thoracic back pain after twisting. PA-C Smith noted that Mr. Harker has degenerative disc disease of his cervical, thoracic, and lumbar spine. PA-C Smith also noted that Mr. Harker recently had an MRI of his thoracic spine, which showed

a disc bulge at T7-T8, and that he was unable to bend over or stand for long periods due to the pain. She assessed thoracic spinal stenosis and thoracic degenerative disc disease. PA-C Smith referred Mr. Harker to a neurosurgeon and prescribed Gabapentin. Further, PA-C Smith indicated that Mr. Harker would be able to return to work on June 17, 2025.

On April 1, 2025, Dr. Hargraves saw Mr. Harker. Mr. Harker reported that physical therapy provided little relief. He reviewed the February 22, 2025, MRI and stated that the canal and cord were okay. Dr. Hargraves noted degenerative discs at T7-T8, T9-T10, and T10-T11. Dr. Hargraves assessed thoracic spinal stenosis and thoracic degenerative disc disease. He also requested a thoracic CT and a chest x-ray.

By order dated April 18, 2025, the claim administrator closed the claim for TTD benefits on the basis that Mr. Harker did not submit evidence to substantiate the continuation of benefits. Mr. Harker also protested this order to the Board.

Mr. Harker followed up with PA-C Smith on May 20, 2025. PA-C Smith assessed thoracic spinal stenosis and thoracic degenerative disc disease and indicated that Mr. Harker could return to work on August 18, 2025.

Dr. Hargraves authored correspondence dated July 22, 2025, regarding Mr. Harker's claim. He stated that Mr. Harker returned to his office that day and complained of refractory pain located at the T7-T8 level. He did not have any left-sided radicular or thoracic symptoms. Dr. Hargraves indicated that a chest x-ray from July 18, 2025, appeared to be normal. A thoracic CT dated July 18, 2025, showed advanced multilevel spondylosis from T6-T12, with bridging osteophytes at each level. Dr. Hargraves did not recommend surgical intervention and opined that Mr. Harker was symptomatic due to multilevel thoracic degenerative disc disease and advanced multilevel spondylosis. Based on the findings of the MRI and CT scan, Dr. Hargraves stated that it was unlikely that Mr. Harker would be able to return to work and recommended that he be considered for disability status.

On July 23, 2025, Mr. Harker followed up with PA-C Smith regarding his thoracic back pain. PA-C Smith assessed thoracic degenerative disc disease, multilevel spondylosis with radiculopathy, and cellulitis and abscess of the neck. Mr. Harker was scheduled to start physical therapy, and he was unable to return to work.

On August 4, 2025, Mr. Harker testified that on December 7, 2024, he was down on his hands and knees pulling heavy cables and felt tension in his back. He stated that he did not think anything of it at the time and continued with the job. Mr. Harker recalled that his back locked up later that evening when he went to get on the motor. He sought treatment at MedExpress, where he was prescribed physical therapy and a referral to a neurosurgeon, which was denied. Mr. Harker indicated that he had pain on the right side of the center of his back. If he turned or bent his back the wrong way, it would lock up. Dr. Hargraves did

4

not recommend additional surgery, as he was afraid that Mr. Harker would be paralyzed. Mr. Harker testified that he had a previous low back surgery performed by Dr. Hargraves in 2016 due to a previous work-related injury.

By order dated December 22, 2025, the Board affirmed the claim administrator's orders, which denied authorization for a referral to a neurological surgeon and closed the claim for TTD benefits. The Board found that Mr. Harker did not establish that the neurosurgery referral is reasonable and necessary treatment for the compensable thoracic sprain, because the treatment was requested for the diagnoses of thoracic spinal stenosis and degenerative disc disease. Regarding TTD benefits, the Board found that Mr. Harker did not establish TTD related to the compensable thoracic sprain past the April 18, 2025, closure. It is from this order that Mr. Harker now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Harker argues that prior to his work injury, his medical history included no mention of a bulging disc at T7-T8, and he was working full duty without ongoing limitations. Further, Mr. Harker asserts that the Board was clearly wrong in affirming the claim administrator's order closing his claim for TTD benefits, because Dr. Mukkamala's IME, which concluded that he did not require further treatment, was clearly wrong. We disagree.

The first issue on appeal is the request for authorization for a referral to a neurological surgeon. Regarding the referral, the Board found that the preponderance of

5

the evidence establishes that the request for a neurosurgery referral was related to the diagnoses of thoracic spinal stenosis and degenerative disc disease and was not related to the compensable thoracic sprain. The Board noted that Dr. Mukkamala found no indication for a neurosurgical referral related to the compensable condition in the claim and felt that the MRI findings were incidental. Thus, the Board found that the claim administrator did not err in denying the request for a neurosurgery referral, which was aimed at treatment of a noncompensable condition.

Turning to the issue of TTD benefits, West Virginia Code § 23-4-1c (2009) provides for the payment of TTD benefits during the healing or recovery period after an injury. No TTD benefits will be paid after the claimant reaches MMI, is released to return to work, or returns to work, whichever occurs first. Here, Dr. Mukkamala placed Mr. Harker at MMI for the compensable thoracic sprain at the time of his March 6, 2025, evaluation, and the Board relied on his findings. On March 17, 2025, PA-C Smith's assessment included only thoracic spinal stenosis and thoracic degenerative disc disease, which are not compensable diagnoses. The treatment records following Dr. Mukkamala's March 6, 2025, evaluation discussed only assessments of thoracic spinal stenosis and degenerative disc disease, and recommended treatment for those diagnoses.

The Board did not commit error when it affirmed the claim administrator's denial of a referral to a neurosurgeon. The Board correctly noted that thoracic spinal stenosis and thoracic degenerative disc disease are not compensable conditions in this claim. The Board also was not clearly wrong in finding that Mr. Harker did not establish his entitlement to TTD benefits for the compensable injury past the April 18, 2025, closure date. The evidence of record indicates Mr. Harker is disabled from medical conditions that are not compensable. We note, as did the Board, that Mr. Harker is not precluded from requesting the addition of thoracic conditions as compensable components of the claim.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong when it affirmed the claim administrator's orders denying a referral to a neurological surgeon and closing the claim for TTD benefits.

Accordingly, we affirm the Board's December 22, 2025, order.

Affirmed.

**ISSUED:** June 30, 2026

6

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White